OPINION OF THE COURT
Ralph Yachnin, J.
This application by petitioner, Ezra Huber, Esq. (Huber), *924 made by notice of petition, dated August 10, 1993, for a judgment, pursuant to CPLR article 78, for the relief set forth in the petition, is disposed of as follows:
Huber is an attorney licensed to practice law in the State of New York. Huber applied for and was granted a real estate broker’s license. It was renewed on January 22, 1992 and had an expiration date of May 31, 1993.
The respondent made the following charges, dated November 5, 1992, against Huber: "Investigation conducted by the Division of Licensing Services, Department of State of the State of New York, disclosed that respondent Real Estate Broker did fail on 9/15/92 to conspicuously post a sign on the outside of 1416 Dartmouth Street, Baldwin, NY, the building at which he is licensed, of sufficient size to be readable from the sidewalk indicating his name and his business as a real estate broker, in violation of Section 441-a 3, Real Property Law.”
A hearing on the alleged violation was held on March 10, 1993, before an Administrative Law Judge (ALJ). After the hearing, the ALJ found Huber guilty as charged and further found that Huber "has demonstrated incompetency”.* The ALJ fined Huber $300; however, the ALJ directed that if Huber did not pay on or before April 30, 1993, then Huber’s license would be suspended for the month of May 1993. Since Huber had surrendered his real estate license after the offense alleged but before the hearing, the AU determined that Huber could not receive another license until he paid the fine.
It is admitted by respondent that when the respondent issued a notice of violation against Huber on November 15, 1992, respondent fined Huber $150 only. Thus, it is clear that for Huber’s "temerity” to have contested the legality of the charges, respondent has added an additional penalty: $150.
Although the petition contains 13 causes of action, Huber’s principal contention appears to be that Real Property Law § 441-a (3) does not apply to attorneys. The basis for his position rests in the seemingly clear language of Real Property Law § 442-f, which appears to exempt lawyers from application of article 12-A.
Article 12-A of the Real Property Law is entitled "Real Estate Brokers and Salesmen”. Real Property Law § 441-a (3) *925 provides in pertinent part: "3. Place of business; business sign required. Except as otherwise provided in this article, each licensed real estate broker shall have and maintain a definite place of business within this state, and shall conspicuously post on the outside of the building in which said office is conducted a sign of a sufficient size.” (Emphasis supplied.)
Real Property Law § 442-f, which is entitled "Saving clause”, provides in pertinent part: "The provisions of this article shall not apply to * * * attorneys at law.” (Emphasis supplied.)
Thus, at least on its face, the law appears to be quite clear: attorneys-at-law do not have to comply with the provisions of article 12-A of the Real Property Law.
It is undisputed that Huber does not and has not used his license and has not acted as a real estate broker; that he relinquished his license after the charge herein was made but before the hearing; that he is in the process of applying for membership in the California Bar and that the present proceeding may interfere with his ambitions to teach law in California; that 1416 Dartmouth Street, Baldwin, New York, is Huber’s home and the place of licensing; and that the zoning ordinances in the area of Huber’s home do not allow posting of the sign respondent claims should have been erected.
Respondent maintains that although nonlicensed attorneys can act as real estate brokers and need not post signs at their offices, once an attorney becomes licensed, the respondent says, the attorney loses control of his right to be a broker and must comply with all parts of article 12-A — despite the clear language of Real Property Law § 442-f. In support of this position, respondent cites Matter of Cianelli v Department of State (16 AD2d 352 [1st Dept 1962]).
In Cianelli (supra) the Appellate Division does not give the facts. In relevant part, the Court states (at 353-354): "As regards Andrew Cianelli, the same considerations would affect the determination. However, in his case Special Term for an additional reason went further and annulled the determination finally as a matter of law. This was on the ground that this petitioner was a lawyer and respondent had no jurisdiction over him. It is true that as an attorney this petitioner could act as a broker without a license (Real Property Law, § 442-f). However, this does not mean that his license as a broker is not subject to regulation by the respondent. As a *926 broker he was privileged to do things that he could not do as an attorney — for example, he could hire real estate salesmen and he could advertise. And having elected to obtain a license and to act pursuant to it, he is subject to respondent’s jurisdiction over licenses. And this continues despite the fact revocation of the license would not affect those rights which petitioner might exercise in regard to real estate transactions by virtue of his membership in the Bar.” There being no facts set forth in this decision, the reader cannot tell whether the Court was dealing with a question of integrity, incompetency or just a ministerial act.
Huber cites the Opinion of the Attorney-General relating to both sections 441 and 442-f. (1979 Opns Atty Gen 69.) In his Opinion, the then Attorney-General decided that attorneys were not subject to the "continuing education requirements” contained in article 12-A. This Opinion, rendered after the Cianelli decision (supra), cites it. In the Opinion, the Attorney-General quotes the following as being the reason for "exempting attorneys for [sic] the licensing requirements for real estate brokers” (at 69-70): " 'Presumptively, at any rate, the honesty and competency of "attorneys at law” are attested by a certificate of admission to practice their profession. Logically a lawyer must have passed a test at least equivalent to that required of an applicant to secure a license as a real estate broker.
" ' "Attorneys at law” are officers of the court. Their relationship with clients is one of trust and confidence, a breach of which subjects them to discipline and removal.’ ”
Further on in the Opinion, the Attorney-General states (at 70): "In my opinion, however, the reasoning used by the Court in Matter of Cianelli should be applied only to situations involving the Secretary of State’s authority to control the conduct of licensed real estate brokers and should not be extended to require attorneys who elect to obtain real estate broker’s licenses to meet the educational requirements imposed by Article 12-A of the Real Property Law on other licensed real estate brokers. Such a result would be an unwarranted emasculation of the legislative intent expressed in section 442-f not to apply the provisions of Article 12-A to attorneys.”
In Weinblatt v Parkway-St. Johns Place Corp. (136 Misc 743 [1930]), cited by Huber, the court there quoted from Chief Judge Cardozo, in pertinent part (at 744): " 'The Legislature *927 has a wide discretion in determining whether a business or occupation shall be barred to the dishonest or incompetent * * * Callings, it is said, there are so inveterate and basic, so elementary and innocent, that they must be left open to all alike, whether virtuous or vicious. If this be assumed, that of broker is not one of them. The intrinsic nature of the business combines with practice and tradition to attest the need of regulation. The real estate broker is brought by his calling into a relation of trust and confidence. Constant are the opportunities by concealment and collusion to extract illicit gains. We know from our judicial records that the opportunities have not been lost. With temptation so aggressive, the dishonest or untrustworthy may not reasonably complain if they are told to stand aside. Less obtrusive, but not negligible, are the perils of incompetence.’ ” The court in Weinblatt (supra) went on to say (at 744):
"Presumptively, at any rate, the honesty and competency of 'attorneys at law’ are attested by a certificate of admission to practice their profession. Logically a lawyer must have passed a test at least equivalent to that required of an applicant to secure a license as a real estate broker.
" 'Attorneys at law’ are officers of the court. Their relationship with clients is one of trust and confidence, a breach of which subjects them to discipline and removal.”
It appears that the respondent is picking those portions of article 12-A it chooses to enforce against attorneys, ignoring others and the proscription of Real Property Law § 442-f s exemption. According to respondent: "While it may be reasonable to assume that the legal education that attorneys have already received is an effective substitute for the education required of brokers, there is no similar rationale for exempting attorneys from the requirement that brokers prominently disclose their licensed status to the public.” This court disagrees.
While the court recognizes, as did the Appellate Division, First Department, in Cianelli (supra), that the respondent does have jurisdiction over licensed attorneys, the exemption contained in Real Property Law § 442-f must here be deemed to apply, unless the matter at hand indicates a failure on the part of the licensee attorney to deal honestly and competently with the public and/or individual members thereof. The clear language of article 12-A indicates that it was not the Legislature’s intent that a lawyer must post a real estate sign in *928 order to maintain his license status. The sign bears no rational relationship to either his honesty or competency, both of which were previously tested and found to be adequate and which even respondent contends it is not questioning.
Moreover, the same rationale as used to exempt attorneys from the continuing educational requirements of the Real Property Law would apply to exempt them from posting a sign: prior training and character qualifications. There appears to be no more reason to require a sign when an attorney is licensed than when he or she is not licensed.
Although respondent maintains that Huber did not explain why he did not use his law practice’s office as the place of business for his real estate license, such statement is patently incorrect. Huber testified at the hearing and states in his papers that he does not use the license. Real Property Law § 441-a (3) specifically uses the words "said office is conducted”. This obviously means where business is conducted, and here it was not being conducted. The respondent’s investigator, who testified against Huber, stated that Huber’s honesty was not being questioned.
The following questions by the ALJ and answers by Huber are relevant here:
"Q How do you take that position [that you are exempt under Real Property Law § 442-f] in view of the holding of the appellate division in the matter of Cianelli?
"A Well, very simple. The decision in that particular case isn’t absolute as to everything other than acting as an attorney. If you look at that and if you — I don’t know if you are familiar with the opinion of the Attorney General, 1979, Op. Gen., 31.1 have a copy for you, if you like.
"In that particular case, the Attorney General himself discusses the applicability of that case and he says that there are certain things, as the Court did, there are certain things that if a broker — if a lawyer is going to do them, then he needs to be licensed and must comply with the licensing requirements. The two which come to mind which I have seen mentioned most often are if you are going to have an office and hire sales people, which I don’t have; or, if you are going to advertise yourself as a licensed broker, which I don’t do.
"Q Wouldn’t that also apply to using an assumed name, which you can’t do as an attorney?
"A The question is the use. Has it been used? You’ve heard *929 the testimony. There is no place that I am actually using this, period. It’s not being used.
"Q It doesn’t matter. Cianelli says that when an attorney voluntarily obtains as [sic] license as a real estate broker he subjects himself to the jurisdiction of the secretary of the [sic] state.”
Clearly, the reading of Cianelli (supra) by the ALJ is too broad. Not only does the respondent’s investigator not question Huber’s honesty or competency, the ALJ concedes that there is no evidence that Huber has ever used his license or conducted business as a real estate broker.
This court holds that respondent’s interpretation of Real Property Law § 441-a (3) and § 442-f and application to Huber are both arbitrary and capricious and that the decision of the ALJ is likewise arbitrary and capricious. The decision of the ALJ, dated April 9, 1993, must be and hereby is vacated in all respects.
Huber’s motion, made by notice of motion, dated August 10, 1993, for discovery and inspection, is denied, as moot, in view of the foregoing.

 Respondent states in its answer: "The Department is willing to modify the decision to the extent of removing the incompetency finding.”